Argued May 1, decided July 18; rehearing denied September 26, 1911.

## STATE *v.* McDONALD.

[117 Pac. 281.]

APPEAL AND ERROR—FORMER DECISION.

1. The decision of the Supreme Court upon the same state of facts on a former appeal becomes the law of the case.

DEPOSITIONS—INFIRMITY OF WITNESSES.

2. Whether the infirmity of a witness when a deposition was taken continued until trial, so as to make the deposition competent, is for the sound discretion of the trial court.

DEPOSITIONS—DISQUALIFICATION OF COMMISSIONER.

3. That the commissioner before whom a deposition was taken had, at the instance of a solicitor, previously taken the affidavit of another witness filed in the case, did not disqualify the commissioner, though such solicitor was present.

DESCENT AND DISTRIBUTION—WHAT LAW GOVERNS.

4. As a rule, the distribution of personalty is governed by the *lex domicilii decedentis,* and the descent of real property by the *lex rei sitae.*

BASTARDS—PROPERTY—INHERITANCE.
5. At common law a bastard was a child of nobody, and could not be the heir of any one, and could not have heirs, except of his own body, but the rule is changed by Section 7351, L. O. L.

From Union: JOHN W. KNOWLES, Judge.

Statement by MR. JUSTICE BEAN.

This is an escheat proceeding, brought under Section 7351, L. O. L., involving certain real and personal property in Union County, Oregon, owned, at the time of his death, by John Morrison of that county, who died intestate. The action, pursuant to the Governor's direction, was instituted on behalf of the State by F. S. Ivanhoe, district attorney for the Tenth Judicial District, against P. A. McDonald, administrator of the estate of John Morrison, deceased, T. M. Rankin, Earl Rankin, George Rankin, R. H. Rankin, Minnie Goodman, Cora Joel, William Morrison, Lawrence Morrison, Euphemia Krohn, J. B. Griswold and State Land Board of the State of Oregon. The amended information was filed August 13, 1907, wherein it is alleged that the intestate left no heirs, children, or widow, or any kindred capable of inheriting his property; that William Morrison, Lawrence Morrison, and Euphemia Krohn, T. M. Rankin, R. M. Rankin, George Rankin, Earl Rankin, Minnie Goodman, and Cora Joel claim to be the owners of the property, but that none of them are entitled thereto; that the whole thereof has escheated to the State of Oregon.

The defendants William Morrison, Lawrence Morrison, and Euphemia Krohn claim to be the brothers and sisters and the heirs of John Morrison, deceased, and as such claim to be the owners of three-fourths of the property, and T. M. Rankin, R. M. Rankin, George Rankin, Earl Rankin, Minnie Goodman, and Cora Joel, as the children of Jeanette Rankin (nee Morrison), deceased, an alleged sister of the decedent, claim to inherit the remaining one-fourth. Issues were joined, and the cause first tried before a jury, when a verdict was rendered in favor of plaintiff,

and from a judgment thereon defendants appealed to this court. Upon the cause being remanded to the trial court, it was again tried before a jury and a second verdict rendered in favor of plaintiff, a judgment thereon rendered, and defendants appeal. At the first trial the case was dismissed as to P. A. McDonald and J. B. Friswold. For a full statement of the issues and former opinions in the case, see, under same title, 55 Or. 419, 448 (103 Pac. 512: 104 Pac. 967).          AFFIRMED.

For appellants there was a brief and an oral argument by *Mr. Turner Oliver.*

For respondent there was a brief over the names of *Mr. Francis S. Ivanhoe,* and *Messrs. Cochran & Cochran,* with oral arguments by *Mr. Ivanhoe and Mr. Charles E. Cochran.*

MR. JUSTICE BEAN delivered the opinion of the court.

1. Numerous errors are assigned by the defendants, many of which were before this court upon the former appeal, and will be passed without consideration, as the former decisions upon the same facts have become the law of the case. *Stager* v. *Troy Laundry Co.,* 41 Or. 141 (68 Pac. 405).

It appears that the intestate, John Morrison, was born about January 13, 1833, at Alva, Scotland, where he lived with Ann Morrison, the mother of Margaret Shaw, a witness herein, until 16 or 17 years of age, when he came to America; that, until he was about 22 years of age, he resided with the family of James Morrison, at Brookfield, Ohio, when he came to the Pacific Coast; that about 1865 he settled in the Grande Ronde Valley, Union County, and died, without having been married, in Portland, Oregon, January 31, 1905.

It is asserted on the part of plaintiff that decedent was the illegitimate son of James Morrison and one Catherine France; that Catherine France afterwards married one

James Lockhart and settled in New Zealand, where she died in 1879; while defendants contend that decedent was the son of James Morrison and Jeanette Marshall, who after his birth intermarried, about the year 1837, thereby, by virtue of Sections 7351, 7352, L. O. L., legitimatizing such issue; that defendants William Morrison, Lawrence Morrison, and Euphemia Krohn are the brothers and sister of the whole blood to the intestate, and that therefore they and T. M. Rankin, R. M. Rankin, Earl Rankin, George Rankin, Minnie Goodman, and Cora Joel, the children of Jeanette Rankin (nee Morrison), deceased, an alleged sister of the whole blood of said intestate, are his lawful heirs.

At the trial of the cause, objection to the reading of the deposition of Mrs. Margaret Shaw was made by counsel for the defense, for the reason that the infirmity of the witness, prevailing on May 19, 1908, when the deposition was taken, had not been shown to continue to the time of the trial. Section 851, L. O. L., provides that when a deposition is taken under subdivision 4 of Section 837, "before the same can be used, proof shall be made that the witness * * still continues * * infirm." *Carter* v. *Wakeman,* 45 Or. 427 (78 Pac. 362). The testimony of Mrs. Shaw's ·attending physician, as well as that of another competent physician, taken at the time of the last trial of the cause, clearly shows that she had been receiving medical attention for about six weeks, and that both physicians saw Mrs. Shaw the morning prior to the commencement of the trial; that she was between 70 and 75 years of age, very nervous, and easily excited; that she was unable to walk up the stairs, and it was believed probable that if subjected to an examination on the witness stand she would undergo a collapse and suffer therefrom. There is also evidence tending to show that at and prior to the time of the first trial· of the case she was infirm and suffering from acute disorders.

2. As held by this court upon a former hearing of the cause, this is a matter which necessarily would be left to the sound discretion of the trial court. Objection was also made that Grace Landors, the commissioner before whom this deposition was taken, had served for a long time as a stenographer in the office of one of the attorneys for plaintiff. The motion does not state when she served as such stenographer, and the affidavit in support thereof is silent upon this question, and it is not shown that the commissioner was incompetent to act as such. Moreover, while counsel for the defense made objection to the taking of this deposition, no objection on this ground was made at the time, nor subsequently, until seven months afterward. We find no error in the admission of the deposition.

3. A motion, supported by affidavit, was filed to suppress, and objection was made to the reading of, the deposition of John Richie. From a careful examination of the affidavit in support of the motion, many of the details of which are contradicted by counter affidavits, and looking solely to the substance thereof, it appears that the objection was made upon the ground that Thomas Arnot, Esq., one of his majesty's justices of the peace for the county of Clackmannan, Scotland, before whom the deposition was taken, had, at the instance of John Reid, a solicitor, previously taken the affidavit of John Richie, which appears on file herein, and is of similar purport to that of this deposition. It does not appear that the commissioner ever acted in the capacity of attorney for any of the interested parties, and we do not think that this fact tends in any manner to disqualify such commissioner, and from all the other matter contained in the affidavit we think there is nothing tending to show that the magistrate in any way was incompetent to act as such commissioner. The deposition appears to have been taken in a painstaking, careful manner, and certified to as required

by Section 842, L. O. L.  The certificate shows that it was typewritten by a disinterested person under the direction of the commissioner, and thereafter read and signed by the witness.  The fact that John Reid, a solicitor, was present, would not of itself indicate any irregularity. Counsel for defendants submitted cross-interrogatories, which were fully answered.

At the conclusion of plaintiff's evidence, counsel for defendants moved the court for a nonsuit, mainly for the reason that plaintiff had failed to show by any competent evidence that John Morrison was an illegitimate child. This motion, to a large extent, was based upon the question of the admissibility of the depositions of John Richie and Margaret Shaw, and the ruling thereon practically determined the motion for nonsuit.  Tested by the rules laid down, after much painstaking research by Mr. Justice SLATER in the former opinion in this case, there was competent evidence to be submitted to the jury, both in the depositions referred to and the other evidence, and there was no error in the court overruling the motion.

The statute of this State, providing for the escheatment of property, is as follows:

"When any person shall die intestate without heirs, leaving any real, personal or mixed property, interest or estate in this State, the same shall escheat to and become the property of this State."  Section 7363, L. O. L.

Two juries, by their verdicts, have found that John Morrison, deceased, was the illegitimate son of Catherine France, and it is not shown that he was legitimatized by the subsequent marriage of his father and mother.

4. This action relates to the descent of real property, and the first question is, By what law is it governed? As a general principle, it is well established that the distribution of personal property is governed by the *lex domicilii decedentis,* and the descent of real property by the *lex rei sitae.*  See note to *Irving* v. *Ford,* 65 L. R. A.

177; *Van Horn* v. *Van Horn,* 107 Iowa 247 (77 N. W. 846: 45 L. R. A. 93) ; 3 Wash. Real Property (6 ed.) § 1852; 5 Cyc. 642; *Blyth* v. *Ayres,* 96 Cal. 532 (31 Pac. 915: 19 L. R. A. 40) ; *Ross* v. *Ross,* 129 Mass. 243 (37 Am. Rep. 321). Especially is this the rule where the right to inherit depends, not upon the status of the child as a legitimate child, but upon the law of descent.

5. By the rule of the common law, a bastard was looked upon as the child of nobody, and sometimes called *filius nullius;* sometimes *filius populi.* He could not be the heir of any one; neither could he have heirs, except of his own body. Blackstone (Lewis' ed.) 455, 459. In the interest of justice, the harsh rule of the common law has been changed by the statutes of many of the states. Our statute in this connection provides:

Section 7351, L. O. L.: "An illegitimate child shall be considered an heir of its mother, and shall inherit or receive her property, real or personal, in whole or in part, as the case may be, in like manner as if such child had been born in lawful wedlock; but such child shall not be entitled to inherit or receive, as representing his mother, any property, real or personal, of the kindred, either lineal or collateral, of such mother; *provided,* that when the parents of such child have formally married, and lived and co-habited as husband and wife, such child shall not be regarded as illegitimate within the meaning of this act, although such formal marriage shall be adjudged to be void."

Section 7352, L. O. L.: "If an illegitimate child shall die intestate, without leaving a widow, husband or lawful issue, the property, real and personal, of such intestate shall descend to or be received by his mother; but if after the birth of an illegitimate child the parents thereof shall intermarry, such child shall be considered legitimate to all intents and purposes."

It will be remembered that upon the trial of this cause it was admitted that James Morrison, deceased, was the putative father of the intestate, and the testimony tends to show that the latter never married, which narrowed

the issues.   The trial court, under the provisions of the
statute quoted above, and following the opinions hereto-
fore rendered by this court in this case, submitted the
question of fact fairly to the jury, and the jury rendered
its verdict.

This appeal was perfected and the transcript and bill
of exceptions prepared after the amendment of November
8, 1910, to Section 3 of Article VII of the Constitution.
The provisions of such section of the constitution, as
amended, are therefore applicable hereto.   *Darling* v.
*Miles,* 57 Or. 593 (112 Pac. 1084).   Under our constitu-
tion, the right of trial by jury in all civil cases remains
inviolate.   Section 17, Article I.   In the consideration of
no case should this right be abridged. In *Wills* v. *Palmer
Lumber Co.,* 58 Or. 536 (115 Pac. 417), this court, speak-
ing through Mr. Justice MOORE, announced the rule gov-
erning cases on appeal, since the constitutional amendment
referred to, as follows:   "Giving to the amendment the
liberal construction necessary to effectuate the purposes
indicated, we believe a fair interpretation of the altered
organic law regulating practice on appeal in this court,
demands a careful examination of the entire record of
the trial of an action at law, including a transcript of
the testimony brought up for review, and any other
material matter, and, if the judgment given is found to
be such as should have been rendered in the case, an
affirmance of the determination of the lower court should
follow without adverting to or commenting upon, in a
memorandum opinion, any trivial errors that may have
been committed.   Where, however, it appears from such
examination that the judgment complained of should be
changed, and it can be determined what adjudication
should have been given, the proper entry must be made
in this court; but if this cannot be done the judgment
should be reversed and the cause remanded for a new
trial, or for such other proceedings as may be necessary,

not inconsistent with a written opinion, stating the reasons for the conclusion reached, which should be handed down in all cases of modifications or reversals." Following this rule, after a careful perusal and consideration of all the matters submitted herein, we are of the opinion that it does not affirmatively appear there was any prejudicial error, or any error that changed the result or verdict in this case.

The judgment of the lower court should be affirmed, and it is so ordered.                                    AFFIRMED.