Argued January 14; affirmed February 16; rehearing
denied April 13, 1937

## In re Gregoire's Estate

## JOHNSON et al. *v.* WILMET et al.

(64 P. (2d) 1328)

*Loyal H. McCarthy*, of Portland, and *W. C. Winslow*, of Salem, for appellants.

*John H. Carson* and *Charles J. Zerzan*, both of Salem (Carson & Carson, of Salem, on the brief), for respondents.

RAND, J. Mary F. Gregoire, whose husband had predeceased her, died intestate and without issue in April, 1930, leaving an estate in Marion county of the appraised value of some $32,000. Joseph P. Wilquet and Henry Wilquet, her brothers, filed a petition in the county court of said county, alleging that one Sarah Wilmet was an illegitimate daughter of Eugenie Ducat, their mother, and had been born in Belgium prior to the marriage of their father, Peter Wilquet, to their mother, and praying that a decree be entered declaring that Sarah Wilmet was not an heir of Mary F. Gregoire, deceased.

Our statute, section 10-201, Oregon Code 1930, provides that an illegitimate child may inherit from his mother and his mother may inherit from him "but such child shall not be entitled to inherit or receive, as representing his mother, any property, real or personal, of the kindred, either lineal or collateral, of such mother". For construction of this statute, see *State v. Looney*, 149 Or. 287 (40 P. (2d) 735). Section 10-202 provides that "* * * if after the birth of an illegitimate child the parents thereof shall intermarry, such child shall be considered legitimate to all intents and purposes."

On final hearing, the county court found that the charge of illegitimacy had not been sustained and entered a decree adjudging and decreeing that Sarah Wilmet was an heir of her deceased sister and entitled to share in part in her estate, and this action of the county court was affirmed upon appeal to the circuit court.

Since the commencement of these proceedings, both of said brothers have died and their personal representatives have been substituted as party petitioners in their stead. Sarah Wilmet has also died, leaving five children, the heirs of her body, and they too have been substituted as parties defendant in these proceedings.

In support of their contention that Sarah Wilmet was an illegitimate daughter of their mother, the petitioners offered in evidence a duly certified copy of a birth certificate which recites that Marie Eugenie Ducat gave birth to a daughter in the town of Jauchelette, province of Brabant, Belgium, on April 15, 1852, and that she was 22 years of age at the time and unmarried. This certificate also shows that the name of the child, as stated in the registration record, was of the same as that of her mother, namely: Marie Eugenie Ducat.

If, as alleged, Sarah Wilmet was the person referred to in this certificate, no explanation has been offered showing why her name was subsequently changed, nor is there any clear and convincing testimony to be found in this record showing that Sarah Wilmet was the child thus referred to. The burden of proving these allegations rests with the petitioners and those substituted for them. At the time these proceedings were instituted, the petitioners' mother had been dead for some ten years and their father for more than

twenty years. The only persons shown to have been living at the time this illegitimate child was born were August and Anton Ducat, half brothers of Eugenie Ducat. The dates of their birth were proved by the petitioners who obtained certified copies of the birth certificates of these two brothers. The certificates show that August was born on February 22, 1849, less than three years and two months before the birth of the illegitimate child, and Anton was born on January 16, 1852, less than three months prior to such birth. Notwithstanding this, they were induced by some one, presumably by Joseph P. Wilquet, who went twice from Oregon to Wisconsin to obtain affidavits and depositions of these two men, to testify that Eugenie Ducat did not know Peter Wilquet at the time the illegitimate child was born and thereby to create an inference that Peter Wilquet could not have been the father of the illegitimate child, who, if he was the father, would have been legitimated upon his marriage to the child's mother, Eugenie Ducat. That this testimony has no intrinsic value is further shown by the fact that August Ducat, the elder, stated in another affidavit:

"That deponent was so young when Sarah was born that he does not know whether her mother was married at or prior to the time of her birth nor does he know whether Peter Wilquet ever knew Sarah's mother before the birth of Sarah; that Sarah must have been about two years old when she came to this country; do not know of any one now living who knew Sarah's mother when Sarah was born; has no knowledge of who Sarah's father is; knows that Peter Wilquet always recognized Sarah as his child the same as the other children of the marriage—Celia, Mary, Joseph P. and Henry Wilquet."

If August Ducat, who was three years old at the time this child was born, had no knowledge of whether

his sister, Eugenie Ducat, was married or not, or as to whether she knew Peter Wilquet or not, or as to whether Peter Wilquet was the father of the illegitimate child, how can it reasonably be contended that a child then less than three months old would have any personal knowledge in respect to any of these matters seventy-five years or more after their occurrence?

According to the testimony of these two old men, they came with their parents, brothers and sister from Belgium when they were little boys wearing dresses and settled in Wisconsin, where they had lived ever since. Neither of them could speak or understand the English language, nor could they sign their names without the use of a mark. Yet it is upon their testimony that the petitioners principally rely.

The only other evidence offered to sustain the allegations of the petition concern certain alleged declarations of Eugenie Wilquet and Peter Wilquet to their sons, Joseph P. and Henry Wilquet. These men both testified that their mother told them that Sarah Wilmet was an illegitimate child born prior to her marriage to their father. It is hardly supposable that, if this were true, either of said parents would disclose said fact to their own children, or that any person would so demean himself, if such information had been disclosed, to attack the reputation for chastity of his deceased mother, who was no longer able to speak for herself.

It appears from the record in this case that Joseph P. Wilquet, shortly after the death of his sister, Mary F. Gregoire, had himself appointed as administrator of her estate and that he came into custody as such of her moneys and property; that he failed to account for the proceeds thus received; that a petition for his removal as administrator upon that ground was filed in the

county court and, after a hearing thereon, an order was made removing him and directing that he should account and pay over the money which he failed to do. Thereafter contempt proceedings were brought against him and he was arrested and imprisoned for contempt. It further appears from his own testimony—at least it can reasonably be inferred from his testimony—that he was the one who induced August and Anton Ducat to make the misrepresentations which he must have known were untrue and from Sarah Wilmet's testimony it appears that he offered her $1,000 if she would make no appearance or contest in these proceedings. Under such circumstances, his testimony ought to be viewed with caution.

The only other circumstances referred to in the record as tending to show the illegitimacy of Sarah Wilmet is the fact that Eugenie Wilquet, in 1910 upon the death of her husband, filed in the county court a petition praying that letters of administration be issued and in that affidavit she attempted to enumerate the heirs of her deceased husband. As so enumerated, she stated that they consisted of Joseph P. Wilquet, Henry Wilquet, Mary Gregoire and Cecelia Ferschweiler, and made no mention of the name of Sarah Wilmet. The evidence, however, shows that she was then nearly 80 years of age, that her mind was feeble; that a guardian for her was afterwards appointed, and this omission may well have been caused by loss of memory upon her part.

The testimony of Sarah Wilmet shows that she was raised in the family of Peter Wilquet and Eugenie Wilquet, his wife; that she always referred to Peter Wilquet as ''father'' and that he always treated her as his own child. Some of Sarah's children testified to their

acquaintance with Peter Wilquet before he left for Oregon in 1880, or thereabouts, and that they always called him "grandfather" and that he always treated them as if they were his own grandchildren.

.██ In the absence of proof to the contrary, the law presumes that all persons are legitimate and before this presumption should be overcome the evidence showing illegitimacy ought to be clear, satisfactory and convincing.

"The rule of the common law is that, if a man marry a woman who is with child, it raises a presumption that the child with which she is pregnant was begotten by him. This presumption is founded on the supposed acknowledgment of paternity by the subsequent act of marriage, and although such presumption is liable to be rebutted, yet, in the absence of proof, it stands." *Reynolds v. Reynolds,* 3 Allen (Mass.) 605.

This common-law presumption, of course, can have no application in this case for, if Sarah Wilmet was the particular person born in Jauchelette, Belgium, on April 15, 1852, then, according to the birth certificate, the mother was unmarried at the time of the daughter's birth, but under our statute, if Peter Wilquet was the father of this illegitimate child, then upon his subsequent marriage to the mother of the child, the child was legitimated. Whether Peter Wilquet was the father of Sarah Wilmet, and whether Sarah Wilmet is the person named in the birth certificate referred to are matters neither of which are satisfactorily proved in this case. The issue involved here is whether Sarah Wilmet was that child and, if so, was Peter Wilquet her father upon whose subsequent marriage she became legitimated? There is no positive testimony from which it may be held that either of said facts have been estab-

lished. The evidence offered was not found to be convincing by the judge of the county court or by the judge of the circuit court and it has failed to convince us of the illegitimacy of Sarah Wilmet by the character of proof by which that fact should be established. For these reasons, we hold, as did the county court and the circuit court, that the evidence is not sufficient to establish the charge.

For that reason the decree of the lower court is affirmed.

BEAN, C. J., and CAMPBELL and BAILEY, JJ., concur.