Argued November 21, 1974, reversed January 20, reconsideration allowed February 27, former opinion adhered to April 7, Vol. 21 Or App, petition for review allowed May 20, 1975

## CLARKSTON (No. 73-4927), *Respondent, v.* BRIDGE, *Appellant.*

### 530 P2d 884

*E. Jay Perry,* Eugene, argued the cause for appellant. With him on the briefs were Luvaas, Cobb, Richards & Fraser, Eugene.

*John W. Burgess,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General and W. Michael Gillette, Solicitor General, Salem.

Before SCHWAB, Chief Judge, and LANGTRY and FORT, Judges.

FORT, J.

On November 13, 1973, Chiquita Clarkston, respondent herein and a resident of the state of Washington, filed a complaint in the Superior Court of the state of Washington for Kitsap County, pursuant to the Uniform Reciprocal Enforcement of Support Act (URESA), ORS ch 110, praying that Michael Bridge, appellant herein, be ordered to pay for the support of one Brandie Jean Lindsey, her minor daughter. In accordance with the Act, the complaint and accompanying certificate and order were forwarded to the Lane County Circuit Court. On November 29, 1973, appellant was served, pursuant to statute, with a citation ordering him to appear before that court and show cause why he should not be ordered to provide support as prayed for in respondent's complaint. Following the refusal to grant a motion to quash and the overruling of a demurrer, hearing was held on March 4, 1974. On March 6, an order was entered whereby appellant was found to be obligated to support respondent's child, and he was directed to pay $75 per month toward her support, such payments to commence on March 25, 1974.

Appellant assigns as error the overruling of his motion to quash and of his demurrer, both of which essentially challenged the jurisdiction of the court to

establish paternity in a URESA proceeding. He further challenges the overruling of his motion for a jury determination on the issue of paternity raised initially by the aforesaid motion and demurrer.

ORS 110.011 provides:

"The purposes of this chapter are to *improve and extend* by reciprocal legislation the *enforcement* of duties of support and to make uniform the law with respect thereto." (Emphasis supplied.)

ORS 110.021 (2) provides:

" *'Duty of support'* includes *any duty of support* imposed or *imposable by law,* or by any court order, decree or judgment, whether interlocutory or final, whether incidental to a proceeding for divorce, legal separation, separate maintenance or otherwise." (Emphasis supplied.)

ORS 110.071 provides:

"Duties of support applicable under this chapter are those *imposed or imposable under the laws of any state where the obligor was present during the period for which support is sought.* The obligor is presumed to have been present in the responding state during the period for which support is sought until otherwise shown."[1] (Emphasis supplied.)

ORS 110.201 provides:

"*If the court of the responding state finds a duty of support,* it may order the respondent to furnish support or reimbursement therefor and subject the property of the respondent to such order." (Emphasis supplied.)

---

[1] The Act refers to the person who owes a duty of support as an obligor, and the party to whom the duty is owed as an obligee. *See generally,* Lefler v. Lefler, 218 Or 231, 344 P2d 754 (1959), for a discussion of the Oregon Uniform Reciprocal Enforcement of Support Act.

ORS 110.031 provides:

"The remedies herein provided are in addition to and not in substitution for any other remedies."

■ On their face, these provisions establish that the Uniform Act creates no duties of support. Its primary function relates to the enforcement of duties already existing under the laws of the responding state. *Aquilar v. Holcomb,* 155 Colo 530, 395 P2d 998 (1964); *Nye v. District Court for County of Adams,* 168 Colo 272, 450 P2d 669 (1969); *Smith v. Smith,* 11 Ohio Misc 25, 224 NE2d 925, 40 Ohio Op 2d 136 (1965).

With reference to paternity disputes arising in URESA, Brockelbank and Infausto, Interstate Enforcement of Family Support, ch 3, p 62 (2d ed 1971), states:

"Another problem in this connection is the adjudication of paternity. Suppose that the defendant enters as his defense that he is not the father of the children for whom support is sought. If the court having jurisdiction of the support case in the responding state is forbidden to decide paternity cases, that would seem to settle the matter. *The Act gives the court no such jurisdiction.* However, the court having jurisdiction of the support case usually has a wider jurisdiction which includes adjudication of paternity. If it does, there is nothing in the Act which prevents its deciding the issue in the support case * * *." (Emphasis supplied.)

It has been held in other jurisdictions that paternity determinations are governed by statutes of the responding state specifically providing therefor and are not independently thereof within the scope of a URESA proceeding. *Aguilar v. Holcomb,* supra; *Nye v. District Court for County of Adams,* supra; *Smith v. Smith,* supra.

The Oregon Legislature has established a comprehensive scheme for the determination of paternity matters. ORS 109.070 provides:

"The paternity of a person may be established as follows:

"(1) The child of a wife cohabiting with her husband who was not impotent or sterile at the time of the conception of the child shall be conclusively presumed to be the child of her husband, whether or not the marriage of the husband and wife may be void.

"(2) A child born in wedlock, there being no decree of separation from bed or board, shall be presumed to be the child of the mother's husband, whether or not the marriage of the husband and wife may be void. This shall be a disputable presumption.

"(3) By the marriage of the parents of a child after his birth.

"(4) By filiation proceedings.

"(5) By paternity being established or declared by other provision of law."

Filiation proceedings are governed by ORS 109.125 *et seq*. Therein, provision is made for adequate notice to the alleged father, a jury trial is provided as a matter of right upon request of either party, and corroborative evidence in addition to the testimony of the mother is required. ORS 109.252 provides for mandatory blood tests on request of a party.

■ Clearly, the legislature intended that filiation proceedings provide substantial substantive and procedural due process safeguards. Furthermore, were we to allow the provisions and protections therein provided to be disregarded when a resident of another state invokes URESA in this state, serious constitutional questions would arise concerning equal protec-

tion of the laws among resident, putative fathers. For example, no rational basis is advanced for denying a jury trial to a putative father in a URESA proceeding while requiring it in an ORS ch 109 proceeding. If fairly possible, a statute is to be construed so as to avoid such constitutional dilemmas. *Wadsworth v. Brigham,* 125 Or 428, 259 P 299, 266 P 875 (1928). *See also: City of Portland v. Welch,* 229 Or 308, 318, 364 P2d 1009, 367 P2d 403 (1961). Since we hold that the court lacked jurisdiction to determine paternity of an illegitimate child in the URESA proceeding, however, we do not reach the constitutional question.

Respondent argues that if paternity of an illegitimate child cannot be determined in this proceeding, Ms. Clarkston would not have a remedy against appellant because she and the child are not Oregon residents.

ORS 109.135 (2) provides:

"All filiation proceedings shall be commenced and tried in the county where either the initiating party or the child resides."

Contrary to appellant's contention, that statute does not preclude respondent from coming to Oregon and thereafter commencing filiation proceedings pursuant to ORS 109.125 *et seq.* Concededly, such could entail considerable expense and inconvenience. However, if the filiation law is to be changed, it is a task for the legislature, not the courts.

Reversed.