On respondent's petition for reconsideration filed February 19 and appellant's answer filed March 10. Former opinion adhered to April 7, petition for review allowed May 20, 1975

# CLARKSTON, *Respondent, v.* BRIDGE
## (No. 73-4927), *Appellant.*
### 533 P2d 815

Lee Johnson, Attorney General, W. Michael Gillette, Solicitor General, and John W. Burgess, Assistant Attorney General, Salem, for petition.

Luvaas, Cobb, Richards & Fraser and E. Jay Perry for answer.

Before SCHWAB, Chief Judge, and LANGTRY and FORT, Judges.

FORT, J.

In her petition for reconsideration of our opinion handed down in this matter on January 20, 1975 (20 Or App 129, 530 P2d 884), respondent for the first time cites *Thom v. Bailey,* 257 Or 572, 481 P2d 355 (1971).[1] It was not alluded to at oral argument.

We note initially that *Thom v. Bailey,* supra, was not a case any aspect of which arose under the Uniform Reciprocal Enforcement of Support Act (URESA) (ORS 110.005 - 110.291). There was no discussion of that Act contained in the opinion. The case, however, discusses at great length ORS 107.070, and particularly subsection (5) thereof. This provision is clearly involved in the case at bar and was discussed by us in our former opinion without reference to the holding and discussion accorded it in *Thom.* Accordingly, we supplement our former opinion.

Under the factual situation at bar, respondent

---

[1] Respondent also cites Yetter v. Commeau, 84 Wash 2d 155, 524 P2d 901 (1974). That case, however, involved the application of the Washington URESA statute to two Washington citizens in a proceeding filed by the mother in one Washington county against a putative father resident of another Washington county.

could only have the paternity of her child adjudicated in a URESA proceeding if Oregon's URESA qualified under ORS 109.070(5) as an "other provision of law" by which paternity may be established.

■■ Our URESA is by its very terms an *enforcement* statute. *See: Lefler v. Lefler,* 218 Or 231, 344 P2d 754 (1959).[2] Its purpose by statute is only to "improve and extend" the *"enforcement* of duties of support" (ORS 110.011; emphasis supplied) "imposed or imposable" (ORS 110.071) under Oregon law. For the reasons stated herein and in our former opinion, we conclude URESA (ORS ch 110) is not an "other provision of law" (ORS 109.070(5) ) for the establishment or determination of paternity.

The decision of our Supreme Court in *Thom v. Bailey,* supra, is not inconsistent with our conclusion. In that consolidated case, plaintiff, an illegitimate child, had sought to establish herself as the daughter of decedent for purposes of inheritance by means of

---

[2] From appellant's Answer to Respondent's Petition for Review, we note the following:

"Respondent offers the 1968 revision of URESA, along with a portion of the *Yetter* opinion (Respondent's Petition for Review, page 5) to demonstrate the 1950 act was intended to include the determination of paternity in enforcement proceedings. However, in the Commissioner's Prefatory Note, Uniform Reciprocal Enforcement of Support Act, Annot., 9 U.L.A. 806 (1973), in explanation of the 1968 revisions, it is said:

" 'The amendments of 1968, like previous ones, are designed to plug loop holes and cure defects in the enforcement procedure.' 9 U.L.A. 806 (1973)

Appellant suggests that while it may be possible to adjudicate the issue of paternity under the 1968 revised URESA, it was not possible prior to the Act's amendment and, in fact, the act of amendment for the stated purpose of curing 'defects', is proof of the previous impossibility. *Respondent's assertion that paternity may be established in a URESA proceeding might have some validity where the particular enactment of URESA contains the 1968 amendments — Oregon's URESA, however, does not.*" (Emphasis supplied.)

two separate proceedings: a declaratory judgment and a proceeding in probate for the determination of heirship.

The court drew the following conclusions regarding ORS 109.070(5):

"* * * [W]e find nothing that demonstrates a legislative intent to require that the term 'other provision(s) of law' by which paternity may be established was intended to be limited to provisions which included specific limitations upon the establishment of paternity relating to the *manner of proof* by which paternity could be established, either for purposes of inheritance or for any other purpose. The fact that specific limitations were included in ORS 109.110 to 109.230 (providing for filiation proceedings) does not of itself require such a result. Indeed, since such provisions were separately and specifically referred to in subsection (4) and since subsection (5) refers to *'other* provision(s) of law' by which paternity may be established, any reasonable inference of legislative intent would appear to be the contrary. [Emphasis theirs; 257 Or at 591-92.]

"* * * * * *

"* * * [T]he legislature did not intend to confine illegitimate children to proof of paternity by filiation proceedings, but * * * by ORS 109.070(5) it was intended that paternity might also be established by *'other* provision(s) of law.'" (Emphasis theirs.) 257 Or at 593.

■ The court then examined the Declaratory Judgment Act and concluded that it was an "other provision of law" by which paternity could be declared. It reasoned as follows:

"The Uniform Declaratory Judgment Act, adopted in Oregon in 1927 (ORS 28.010 et seq) is a 'provision of law,' conferring jurisdiction upon Oregon courts of record 'power to declare rights,

status, and other legal relations, whether or not further relief is or could be claimed.' ORS 28.040 provides that any person interested as an heir in the estate of a decedent may have 'a declaration of rights or legal relations in respect thereto: (a) To ascertain * * * heirs, next of kin * * *' ORS 28.120 provides that the purpose of the statute is 'to settle and to afford relief from uncertainty and insecurity with respect to rights, status and other legal relations, and is to be liberally construed and administered.' " (Footnote omitted.) 257 Or at 595.

Clearly, this Act, unlike URESA, includes an implied authorization for the court, following the death of a putative father, to make determinations of paternity as a part of its authority "to determining heirs." Furthermore, nowhere is the Declaratory Judgment Act declared to be for enforcement purposes only.

*Thom* also held that a proceeding to determine heirship under former ORS 117.510 et seq also was included in "other provisions of law" by which paternity may be established. As the court pointed out, that law contained a clear grant of authority to adjudicate heirship and set forth the procedures for such a determination.

In *Thom* the court was faced with the claim of a child against the estate of a deceased person claimed by her to be her natural father. Here we deal with a claim to establish paternity lodged by a nonresident mother against a citizen of this state alleged by her to be the father of her child, which must be established as preliminary to a claim of support and determination of the amount therefor.

In our former opinion we concluded that the legislature in adopting ORS 109.070(5) did not intend that the fact of paternity should under such circumstances be established in a URESA (ORS ch 110) proceeding. We pointed to the serious equal protec-

tion concerns that a contrary holding would necessarily raise. We noted that here the trial court denied his timely demand for a jury trial, nowhere provided for in ORS ch 110 but guaranteed in an ORS ch 109 filiation proceeding.

We also noted in that connection that in a filiation proceeding (ORS 109.125 - 109.165) either party could require a blood test of both the child and each other (ORS 109.252) under the Uniform Act on Blood Tests to Determine Paternity. That statute states in part: "In a civil action under ORS 7.215 and 109.125 to 109.165," such tests "shall [be] order[ed]" upon appropriate motion. Nowhere does it refer to such a right in a URESA proceeding. Nor does any provision of ORS ch 110 adopt it by reference in a URESA proceeding.

Since we see nothing inconsistent in our former holding here with the Supreme Court's holding in *Thom,* we adhere to that opinion.