Argued July 7, reversed September 5, 1975

CLARKSTON, *Petitioner, v.* BRIDGE, *Respondent.*

539 P2d 1094

*John Burgess,* Assistant Attorney General, Salem, argued the cause for petitioner. With him on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

*E. Jay Perry,* of Luvaas, Cobb, Richards & Fraser, Eugene, argued the cause and submitted the brief for respondent.

HOWELL, J.

This is a proceeding under the Uniform Reciprocal Enforcement of Support Act (URESA), ORS ch 110, in which plaintiff, a Washington resident, seeks support for her minor daughter from defendant, an Oregon resident. The trial court found defendant to be the father of the child and awarded plaintiff $75 per month support. The Court of Appeals reversed, 20 Or App 129, 530 P2d 884, supplemental opinion, 21

Or App 1, 533 P2d 815 (1975). We granted review to consider important questions concerning the interpretation of the URESA.

Plaintiff, an unwed mother in Kitsap County, Washington, sought support for her minor daughter from defendant, a resident of Lane County, Oregon. Pursuant to URESA, plaintiff filed her complaint in Kitsap County Superior Court, alleging that defendant was the father of her daughter and that he had failed to provide support for the child. The Superior Court, after examining the complaint, ordered it and the testimony of the plaintiff forwarded to the Lane County Circuit Court.[1]

Defendant was served in Lane County with an order to appear and show cause why he should not be ordered to provide support. He filed a motion to quash service of the order and a demurrer to the complaint, each alleging that there had been no prior adjudication of paternity and contending that the circuit court, in a URESA proceeding, lacked jurisdiction to establish paternity. The motion and demurrer were overruled.

At trial the defendant moved to have the entire case transferred to the jury docket to proceed as a filiation proceeding or, alternatively, for a jury determination of the paternity issue in the URESA proceeding. The motion was denied and, following a finding of paternity, the court awarded $75 per month for child support.[2]

---

[1] The testimony which was sent to Lane County consists of the plaintiff's sworn answers to certain questions submitted by the prosecuting attorney on plaintiff's behalf.

[2] The procedures under the Uniform Reciprocal Enforcement of Support Act are well summarized in Lefler v. Lefler, 218 Or 231, 235, 344 P2d 754 (1959):

"The civil enforcement provisions create and authorize

On appeal, the Court of Appeals reversed the trial court and held that the circuit court lacked jurisdiction to determine paternity in a URESA proceeding. The court found that the URESA was limited to the enforcement of existing duties of support and, since there had been no prior determination of paternity in the instant case, there could be no existing duty of support to be enforced.

We disagree with the Court of Appeals' interpretation of the statute. The URESA is designed to provide an inexpensive, simplified and effective means whereby an obligee in one state can enforce the duties of support owed by an obligor in another state. *Lefler v. Lefler*, 218 Or 231, 234-36, 344 P2d 754 (1959). *See also M—— v. W——*, 352 Mass 704, 706-07, 227 NE2d 469 (1967), and cases cited therein. Under the URESA

---

the use of a two-state proceeding to enforce the payment of support money which the authors of the measure believed would enable the obligee to enforce payment of support money inexpensively. The proceeding is calculated to render it unnecessary for the obligee to incur the expense of traveling to the state where the obligor resides in order to give testimony. The prefatory note from which we have quoted says:

" '* * * In the past, the greatest difficulty in enforcing support where the parties are in different states has been the expense of travel to a distant state to litigate the rights of the destitute obligee. Under this Act this expense can be reduced to filing fees plus a few postage stamps. * * *' "

"The prefatory note describes the two-state proceeding in this manner:

" '* * * It opens with an action (Section 9) which normally will be commenced in the state where the family has been deserted (the initiating state). A very simplified petition is filed (Section 10). The judge looks it over to decide whether the facts show the existence of a duty of support and if they do he sends the petition and a copy of this Act to a court of the responding state to which the husband has fled or in which he has property (Section 13). That court will take the steps necessary to obtain jurisdiction of the husband or his property, will hold a hearing (Section 17) and if the court finds that a duty of support exists, it may order the defendant to furnish support * * *.' "

the function of the trial court of the responding state (Oregon in this case) is to determine whether the respondent owes a duty of support and to provide for the enforcement of any duty so found. ORS 110.201 provides:

> "If the court of the responding state finds a duty of support, it may order the respondent to furnish support or reimbursement therefor and subject the property of the respondent to such order."

ORS 110.021(2) defines "duty of support":

> " 'Duty of support' includes any duty of support imposed or *imposable by law,* or by any court order, decree or judgment, whether interlocutory or final, whether incidental to a proceeding for divorce, legal separation, separate maintenance or otherwise." (Emphasis added.)[3]

Clearly then, the URESA authorizes both the finding and the enforcement of duties of support which have not been previously established in another proceeding.[4]

---

[3] *See also* ORS 110.071, which provides:

> "Duties of support applicable under this chapter are those imposed *or imposable* under the laws of any state where the obligor was present during the period for which support is sought. The obligor is presumed to have been present in the responding state during the period for which support is sought until otherwise shown." (Emphasis added.)

In Oregon a father owes his illegitimate child essentially the same duties of support as he owes a legitimate child. ORS 109.060. *See* Thom v. Bailey, 257 Or 572, 589, 481 P2d 355 (1971); Dannells v. U.S. National Bank, 172 Or 213, 241-47, 138 P2d 220 (1943). Moreover, this duty is one which is "imposable by law." *See e.g.,* Gostevskyh v. Kalugin, 7 Or App 623, 492 P2d 826 (1972). *See also* Brown v. Thomas, 221 Tenn 319, 323, 426 SW2d 496 (1968):

> "Under the [URESA] statute, the duty of support need not be the result of court action; but may be any duty imposable by law. Such a duty is imposable upon a putative father by the provisions of T.C.A. Section 36-223."

[4] This authority extends to all classes of support obligations without exception.

■ Moreover, in determining whether the respondent owes a duty of support to an illegitimate child, the court must necessarily first decide whether the respondent is the child's father. Therefore, since ORS 110.201 authorizes the circuit courts to find, as well as to enforce, a duty of support in a URESA proceeding, the statutory authority to establish paternity in that proceeding seems clearly implied.

This construction of the URESA conforms to the interpretation which has been expressed by the drafters of the uniform statute. Professor Brockelbank, chairman of the committee which prepared the URESA, has stated that courts which have jurisdiction to adjudicate paternity cases, such as our circuit courts, should not hestitate to exercise that jurisdiction in a URESA proceeding.

"* * * Suppose the defendant enters as his defense that he is not the father of the children for whom support is sought. If the court having jurisdiction of the support case in the responding state is forbidden to decide paternity cases, that would seem to settle the matter. The Act gives the court no such jurisdiction. *However, the court having jurisdiction of the support case usually has a wider jurisdiction which includes adjudication of paternity. If it does, there is nothing in the Act which prevents its deciding the issue in the support case.* It would be dangerous to decide that the paternity issue could never be decided in the reciprocal case. If it were so decided, defendants would begin interposing such a defense as a subterfuge merely to avoid their obligations." W. Brockelbank & F. In-

"All duties of support are enforceable by petition irrespective of relationship between the obligor and obligee. Jurisdiction of all proceedings hereunder shall be vested in the circuit court of each county." ORS 110.091.

fausto, *Interstate Enforcement of Family Support*, 62 (2d ed 1971). (Emphasis added.)[5]

Our interpretation of our statute is also in accord with the decisions of other states whose URESA is similar to Oregon's (*see Sardonis v. Sardonis,* 106 RI 469, 261 A2d 22 (1970); *Yetter v. Commeau,* 84 Wash 2d 155, 524 P2d 901 (1974); *Brown v. Thomas,* supra; and *M—— v. W——,* supra) as well as with the law of those states which have recently adopted the revised version of the URESA which explicitly authorizes the adjudication of paternity.[6] We also note that subse-

[5] Our decision is further supported by Section 22 of the URESA which provides:

"Laws attaching a privilege against the disclosure of communications between husband and wife are inapplicable to proceedings under this chapter. Husband and wife are competent witnesses and may be compelled to testify to any relevant matter, including marriage and parentage." ORS 110.251.

It seems obvious that, unless the drafters of the URESA contemplated the possibility of inquiries into the question of paternity, they would not have included ORS 110.251, allowing or compelling husband and wife to testify "to any *relevant* matter, including marriage and *parentage*." (Emphasis added.)

[6] In 1968 the URESA was revised, and Section 27 of the new version provides:

"If the obligor asserts as a defense that he is not the father of the child for whom support is sought and it appears to the court that the defense is not frivolous, and if both of the parties are present at the hearing or the proof required in the case indicates that the presence of either or both of the parties is not necessary, the court may adjudicate the paternity issue. Otherwise the court may adjourn the hearing until the paternity issue has been adjudicated." 9 ULA 872 (1973).

The Washington Supreme Court has interpreted this addition as being an effort on the part of the Commissioners to spell out with more clarity the procedures to be followed in determining paternity in a URESA proceeding and not as an indication that the former uniform act would not allow the adjudication of the paternity issue. Yetter v. Commeau, 84 Wash 2d 155, 524 P2d 901 (1974). Idaho, Kentucky and Maine, while adopting the 1968 version of the URESA, did not adopt § 27. 9 ULA 872 (1973).

quent to the decisions of their courts in *Nye v. District Court for County of Adams,* 168 Colo 272, 450 P2d 669 (1969), *Aguilar v. Holcomb,* 155 Colo 530, 395 P2d 998 (1964), and *Smith v. Smith,* 11 Ohio Misc 25, 224 NE2d 925 (1965), the cases relied upon by the Court of Appeals for the proposition that paternity may not be established in a URESA proceeding, the legislatures of both Colorado and Ohio enacted the revised version of the URESA to allow for a determination of paternity in their URESA proceedings.[7] Correspondingly, our decision also conforms to the legislative directive that the URESA is to be construed so as to maintain its uniformity from state to state:

> "This chapter shall be so interpreted and construed as to effectuate its general purpose to make uniform the law of those states which enact the Uniform Reciprocal Enforcement of Support Act." ORS 110.006.

Finally, our conclusion is supported by ORS 109.-070, which enumerates the methods for establishing paternity in Oregon, and by our recent decision in *Thom v. Bailey,* 257 Or 572, 481 P2d 355 (1971), interpreting that statute. ORS 109.070 provides, in part:

> "The paternity of a person may be established as follows:
> "* * * * *.
>
> "(3) By the marriage of the parents of a child after his birth.
>
> "(4) By filiation proceedings.
>
> "(5) *By paternity being established or declared by other provision of law.*" (Emphasis added.)

In *Thom v. Bailey,* supra, plaintiff brought both a declaratory judgment proceeding and a proceeding to

---

[7] *See* Ohio Rev Code Ann, § 3115.24 (1972); Colo Rev Stat 1963, § 43-2-27 (Supp 1971).

determine heirship in which she alleged that she was the illegitimate daughter of the deceased and was entitled to inherit his entire estate. There had been no prior adjudication of paternity. The court noted that a filiation proceeding was not the only method for determining the paternity of illegitimate children under ORS 109.070. The court also noted that the legislature had declared that the paternity statute was to be liberally construed.[8] The court then held that declaratory judgment proceedings and proceedings to determine heirship were "other provision[s] of law" which could be utilized in a proper case to establish paternity. *Thom v. Bailey,* supra at 596, 600.

We feel that the URESA is also an "other provision of law" which is available to establish paternity. Thus, we conclude that the circuit courts have the necessary authority to determine paternity in URESA proceedings.[9]

Defendant's second contention is that the trial court erred in denying his motion for a jury trial on the issue of paternity. Since the Court of Appeals found

---

[8] ORS 109.090(2) is the current provision which replaced the essentially identical statute cited by the *Thom* court. ORS 109.090(2) provides:

"ORS 109.060 to 109.090 and 111.231 shall be liberally construed, with the view of effectuating their objects, notwithstanding the rule of common law that statutes in derogation thereof are to be strictly construed."

[9] The result of a contrary interpretation would be to require the nonresident plaintiff to bring a filiation proceeding to establish paternity before initiating a URESA action for support. ORS 109.135, the filiation statute, provides, in part:

"(2) All filiation proceedings shall be commenced and tried in the county where either the initiating party or the child resides."

We express no opinion as to whether this statute is merely a venue provision or whether it would purport to require a nonresident to establish Oregon residency before initiating a filiation proceeding.

that the circuit court lacked jurisdiction to establish paternity in a URESA proceeding, it did not decide the issues raised by the denial of defendant's motion for a jury trial on that issue.[10] However, because of our holding that the circuit courts do have jurisdiction to establish paternity in URESA proceedings, we must now consider the propriety of the trial court's denial of defendant's motion.

■ Preliminarily, plaintiff contends that the defendant is not entitled to a jury trial in this case since his motion was not timely made pursuant to Rule 5.010 of the circuit court for Lane County.[11] However, it does not appear from the record that this objection was raised in the trial court, or that it played any part in the trial court's decision to deny defendant's motion. Moreover, the timeliness of the motion is a defect which could have been excused at the discretion of the trial court and, in the absence of an exercise of that discretion, we are not inclined to affirm the denial of defendant's motion on that basis alone. In any event, it is not clear to us that defendant's motion for a jury determination of paternity was actually untimely under the local rule, and we would be reluctant to so hold without a previous consideration of that issue by the local court.

■ The URESA itself is silent as to whether particular issues contested in a URESA proceeding are to

[10] Clarkston v. Bridge, 20 Or App 129, 530 P2d 884, 21 Or App 1, 533 P2d 815 (1975).

[11] Rule 5.010, Lane County Circuit Court, provides, in part: "(3) No motion for postponement shall be considered in any case unless the motion is filed more than one week before the trial date; provided, however, an exception may be made if a written stipulation signed by all counsel is filed with the motion, or if the parties seeking such exception shall, in addition to the statutory requirements, satisfy the court that the cause for postponement came to the knowledge of the party and his counsel too late to be timely presented. * * *"

be tried to a jury or to the court alone. While, as we have seen, the URESA authorizes a determination of paternity in a URESA proceeding, specific procedures for making that determination are not set forth in the uniform statute.[12] However, our legislature has explicitly provided that in all filiation proceedings, ORS 109.125 *et seq.*, either party has the right to demand a jury trial on the issue of paternity. ORS 109.135(1). Since the issues involved in establishing paternity in a URESA proceeding precisely parallel those raised in a filiation proceeding, we believe that, absent some distinguishing policy, parallel procedures should be followed.

■■ When the legislature has not spoken on a particular issue which arises under a statute, it is our duty to determine their probable intent. *State v. Tippie,* 269 Or 661, 525 P2d 1315 (1974). When ascertaining the probable intent of the legislature, the statute in question must be read in conjunction with other statutes relating to the same subject matter. *Kankkonen v. Hendrickson et al,* 232 Or 49, 67, 374 P2d 393, 99 ALR2d 296 (1962) ; *State v. Popiel,* 216 Or 140, 145, 337 P2d 303 (1959) ; *Watts v. Gerking et al,* 111 Or 641 at 654, 659, 222 P 318, 228 P 135 (1924). Whenever possible, statutes which relate to the same subject and rest upon the same or similar policies should be construed so as to be "uniform in their application and

---

[12] Since the statute was drafted as a uniform act, the URESA enacted by the Oregon legislature does not attempt to mandate the specific procedures to be followed in implementing its provisions; rather, it was designed to fit into the existing procedural framework of the adopting states. *See* Commonwealth v. Warren, 204 Md 467, 471, 105 A2d 488 (1954); Brockelbank, *Is the Uniform Reciprocal Enforcement of Support Act Constitutional?,* 31 Or L Rev 97, 106-07 (1952). Similarly, the new provision of the 1968 version of the URESA which explicitly authorizes a determination of paternity does not articulate any particular procedure for making that determination. See note 7, supra.

in the results which they accomplish." *Daly v. Horse-fly Irrigation District*, 143 Or 441, 445, 21 P2d 787 (1933). *See also* ORS 1.160.

■ The URESA is a remedial statute designed to equalize the relative positions of resident and nonresident plaintiffs in support proceedings. While it reflects a legislative interest in minimizing the additional burdens and expenses which would otherwise be incurred by nonresident plaintiffs, this interest must be balanced against a legislative concern for the sensitivity of paternity adjudications and the corresponding legislative policy of providing procedural protections for such determinations, including the right to a jury trial of that issue.[9] Moreover, it does not appear to us that a nonresident plaintiff will encounter significantly greater difficulties in presenting her case to a jury than she would experience in arguing her case to the trial judge without a jury.[10] Thus, we believe that, in the absence of an indication of legislative intent to the contrary, the procedures for establishing paternity in a support action under URESA should parallel those mandated by the legislature for establishing paternity in other support proceedings.[11]

[9] In addition to the right to a jury determination of paternity in filiation proceedings, the legislature has provided for private hearings on the issue of paternity, ORS 109.155(1), and the right to demand blood tests, ORS 109.252. Moreover, when paternity is denied by the putative father, evidence corroborating the testimony of the mother is required, ORS 109.155(1). While it is unnecessary for us to decide in this case whether all the procedural protections required in filiation proceedings are applicable in URESA proceedings in which paternity is contested, we do not discern any reason why they should not be.

[10] Normally, in either situation, nonresident plaintiffs will find it necessary to present their cases entirely by deposition, · since their financial resources will not permit them to journey to this state in order to be present for the URESA proceeding.

[11] We may also note that, although there does not appear to be any constitutional right to a jury trial when paternity is con-

Finally, the decision which we reach today is not inconsistent with *Thom v. Bailey,* supra. *Thom* involved a claim against the estate of a deceased person by an illegitimate child who sought to establish that the deceased was her natural father. In *Thom* we determined that under ORS 109.070 a filiation proceeding was not the only method of establishing the paternity of an illegitimate child for inheritance purposes, and that the legislature did not intend to restrict the manner of proof in declaratory judgment suits and proceedings to determine heirship in which paternity was contested. No demand for a jury trial was made in that case.

The decision of the Court of Appeals that the circuit court has no jurisdiction to determine paternity of an illegitimate child in a URESA proceeding is reversed with directions to remand the cause to the circuit court for further proceedings consistent with this opinion.

---

tested in a support proceeding, it appears that most jurisdictions provide for jury trials in such cases. *See* Waddell v. Arkansas, 235 Ark 293, 294, 357 SW2d 651 (1962); 94 ALR2d 1128 (1964); 10 CJS 185, Bastards § 103 (1938); 7 CJ 997, Bastards § 74 (1916). Moreover, although in this case it was the defendant who moved for a jury trial, both parties enjoy that right, and it is not inconceivable that at least some nonresident plaintiffs will desire a jury determination of paternity in their URESA action.