# MARIE ARNOLD, Personal Representative of the Estate of Pauline Y. Foreman, Dec'd
*v.*
# DEPARTMENT OF REVENUE

John P. Kneeland, Bernard, Hurley, Hodges & Kneeland, Portland, represented plaintiff.

James D. Manary, Assistant Attorney General, Salem, represented defendant.

Decision for defendant rendered August 2, 1978.

CARLISLE B. ROBERTS, Judge.

Plaintiff has appealed from defendant's Order No. IH 77-9, dated November 21, 1977. In that order, defendant determined that the inheritance tax return filed by plaintiff as personal representative of the Estate of Pauline Young Foreman, Deceased, understated the inheritance tax due the State of Oregon by $102,494.71, plus interest. The determination was based upon defendant's findings on two issues: (a) that Oregon had jurisdiction to impose its inheritance tax on the corpus of a trust Mrs. Foreman created in 1951

while she was a resident of California, and (b) that income taxes paid on behalf of Mrs. Foreman, after her death, to the State of Hawaii were not allowable as a deduction under ORS 118.070 in computing the Oregon inheritance tax.

On September 7, 1951, while a resident of California, Pauline Young Foreman entered into an irrevocable trust agreement with the Bishop Trust Company, Limited, of Honolulu, Hawaii. Mrs. Foreman funded the trust, which was to continue for 30 years, entirely with intangible personal property. In pertinent part, the trust agreement provided for the disposition of the trust income and corpus as follows:

"(a) The Trustee shall pay the net income to or use and apply the same for the benefit and account of the Settlor for a period of thirty (30) years from the date hereof or until the death of the Settlor whichever shall first occur, * * *

"(b) From and after the death of the Settlor, should she die within said thirty (30) year period, the Trustee shall pay out of the net income of the trust estate the sum of $150.00 per month to James Foreman, husband of the Settlor should he be then surviving, said payments to continue during his lifetime or until his remarriage or until the expiration of said thirty-year period, whichever shall first occur, and the trustee shall pay the remaining net income to or use and apply the same for the benefit and account of Marie MacRae, daughter, and Roy MacRae, son of the Settlor, in equal shares, until the expiration of said thirty-year period or until the death of the last survivor of said children, whichever shall first occur; should either of said children die leaving issue, then the issue shall take the share of the deceased parent, per stirpes, and if either of said children shall die without issue, then the surviving child shall take all the income, * * *

"(c) This trust shall cease and determine thirty (30) years from the execution date hereof, and the property then comprising the trust estate, together with the accumulated or accrued or undistributed income, shall at that time vest in and shall be transferred, conveyed and delivered by the Trustee, absolutely and in fee simple,

[ 487 ]

free and clear from any trusts, to the Settlor if she be then alive, and if she be then deceased, then in equal shares to Marie MacRae and Roy MacRae, and if either of them be dead leaving issue, then the issue shall take per stirpes and not per capita the share of the deceased parent, and if there be no issue, then all to the survivor of the said children, provided, however, that should the Settlor and both of the above named children of the Settlor die within said thirty (30) year period, then upon the death of the last survivor of the Settlor and said children, this trust shall cease and determine, and the property then comprising the trust estate, together with the accumulated or accrued or undistributed income, shall at that time vest in and shall be transferred, conveyed and delivered by the Trustee, absolutely and in fee simple, free and clear from any trusts, to the then surviving issue of the children of the Settlor, per stirpes and not per capita, and if there be no issue, then to the Settlor's heirs at law as if she had died intestate immediately following the death of the last surviving child."

In addition to the right to receive the trust income for 30 years during her lifetime (*i.e.,* to September 5, 1981) and the right to the reversion of the corpus plus accrued income if she survived the 30-year term of the trust, Mrs. Foreman reserved the following rights in and powers over the trust: the power to appoint a trustee in California and move the trust assets from Hawaii to California; the right to withdraw portions of the principal for her support and maintenance or when she determined that an emergency existed (with a $30,000 aggregate withdrawal limit); the power to change the disposition of the net income from herself to her children as their needs may have arisen; and the power to add assets to the trust. None of these additional rights or powers was ever exercised by Mrs. Foreman.

Subsequent to the creation of the trust, Mrs. Foreman moved to Oregon in 1968 and became domiciled in this state. She remained an Oregon resident until her death on November 25, 1975, aged 72 years. All of the

[ 488 ]

assets of the trust at the time of Mrs. Foreman's death were intangible personal property, legally owned and under the control of the Hawaiian trustee.

■■ It is well settled that the transfer of a decedent's intangible personal property may be subjected to taxation in the state of the decedent's domicile and that the Fourteenth Amendment of the U.S. Constitution provides no barrier to such taxation. *Curry v. McCanless,* 307 US 357, 59 S Ct 900, 83 L Ed 1339, 123 ALR 162 (1939). Also, the courts have uniformly upheld the state's power to impose an inheritance tax on those *inter vivos* transfers which take effect upon the death of the decedent.

The parties are in agreement that the creation of the above-described trust was a transfer "intended to take effect in possession or enjoyment after the death of the grantor," within the scope of ORS 118.010(1)(c), which imposes an inheritance tax on such transfers if the property or any interest therein is within the jurisdiction of the state. As stated in Pl Memo 2, at lines 6-16:

> "Plaintiff's contention is this: Where a decedent, during his or her lifetime, and while domiciled in one state, creates an irrevocable trust of which he or she is the life income beneficiary, and, after creating the trust, becomes domiciled in a seond state, and dies domiciled in that second state, the second state may not constitutionally levy an estate or inheritance tax on the corpus of that trust unless the decedent, at his or her death, had some right which, by some voluntary act or omission, he or she could affect the beneficial enjoyment of the corpus of the trust after his or her death."

Plaintiff's position is that, prior to establishing her domicile in Oregon, Mrs. Foreman parted with all her rights to affect the beneficial enjoyment of the trust corpus after her death, except as to the $30,000 which was subject to withdrawal by the decedent (and plaintiff admits that Oregon's transfer tax is applicable to this amount). With this exception, plaintiff insists

[ 489 ]

that Mrs. Foreman never possessed a sufficient interest in the disposition of the corpus while she was domiciled in Oregon to bring it within Oregon's jurisdiction to impose any additional inheritance tax.

In furtherance of her contention that decedent had no power to control the beneficial enjoyment of the trust estate after her death, she argues that the right of revestment in the trust (if decedent had lived to September 7, 1981) terminated at decedent's death; that the right to receive income terminated at decedent's death; that except for the $30,000 described above, decedent had no power to determine how the trust would be enjoyed after her death; that the power to add to the corpus gave no reason to tax the corpus; that the power to appoint a California trustee would add no power to control the disposition of the remainder; and, certainly, the power to shift income to her children during decedent's life could not affect the passage of the corpus at the time of death.

█ In determining whether or not Oregon has the jurisdiction to impose its inheritance tax in this instance, it is important to remember that the tax is not imposed directly on the trust corpus. Rather, the tax is imposed on the shifting of the economic benefits and burdens to the beneficiaries at or after the decedent's death, with the value of the shifting property serving as the measure of the tax. The thing burdened is the right to receive. "We are not concerned here with a tax on the privilege of transmission, but with a tax on the privilege of succession. 'Our statute looks not to the estate or interest which was ended by death, but to the estate or interest which was newly created by death.' * * *" *In re Lowengart's Estate,* 160 Or 118, 124, 84 P2d 105, 107-108 (1938).

If the impact of the tax is placed upon the right to receive, as stated above, what justification does Oregon have to impose a tax in this instance, where the beneficiaries' right to receive is based upon the protection provided by the State of Hawaii, rather than the

State of Oregon? This is the basic question presented by the plaintiff and she finds support in three decisions for her view that Oregon lacks jurisdiction.

The oldest decision is *MacClurkan v. Bugbee,* 106 NJL 192, 150 A 443 (1930). In that case, the settlor, while domiciled in Illinois, created a trust of intangible assets conveyed to an Illinois trustee. Neither settlor, trustee or beneficiaries was domiciled in New Jersey. The trust was irrevocable only for a five-year period and provided that the income was to be paid for life to the settlor. After creating the trust, the settlor married and moved to New Jersey where she died within the five-year period. The New Jersey court held that New Jersey could not tax the corpus of the trust, stating that domicile, by itself, gave New Jersey no standing.

> "It has not been shown to us that the state of New Jersey has contributed in any way, governmental or otherwise, either in fact or by legal fiction, toward or for the subject matter of the gift, or the act of giving (viz. the transfer), or the giver or the recipient, as the foundation for the imposition of a tax. The only affirmative factor is that, after all the effective steps had been taken, the donor came to New Jersey, lived and died here, meanwhile having no care or custody of the fund, no control thereover, no power to revoke the provisions of the trust instrument. * * *" (106 NJL at 198, 150 A at 446.)

The cases of *Hooton v. Neeld,* 12 NJ 396, 97 A2d 153 (1953), and *Commonwealth v. Morris,* 196 Va 868, 86 SE2d 135 (1955), are based upon the same theory. *Cf. Est. of Seitz v. Dept. of Rev.,* 6 OTR 241 (1975). However, the only other cases found in which the factual situation was closely similar to the facts in the subject suit (particularly, the creation of the trust by a nondomiciliary who subsequently changed domicile to another state and died there, the trustee continuing to exercise its powers in a different state) hold to the contrary. *Bunting v. Sullivan,* 152 Conn 331, 206 A2d 471 (1965); *Hackett v. Bankers Trust Co.,* 122 Conn 107, 187 A 653 (1936). As Mr. Justice Douglas said in

*Central Hanover Bank Co. v. Kelly,* 319 US 94, 96-97, 63 S Ct 945, 947, 87 L Ed 1282, 1285 (1943):

"It is much too late to contend that domicile alone is insufficient to give the domiciliary state the constitutional power to tax a transfer of intangibles where the owner, though domiciled within the state, keeps the paper evidences of the intangibles outside its boundaries. * * * The command of the state over the owner, the obligations which domicile creates, the practical necessity of associating intangibles with the person of the owner at his domicile since they represent only rights which he may enforce against others—these are the foundation for the jurisdiction of the domiciliary state to tax. * * *"

The experience of the federal government* has been observed by the states; the inheritance tax provisions have been construed by the state courts in a manner which affirms the legislative intent and avoids creating a fruitful source of tax evasion.

 Decedent did retain substantial interests in the intangibles which constituted the trust corpus. Mrs. Foreman retained the right to the income generated by the trust for the duration of the trust (30 years) or until her death, whichever occurred first. This interest insured that no one else could use or enjoy the trust corpus at least until Mrs. Foreman's

---

*In *May v. Heiner,* 281 US 238, 50 S Ct 286, 74 L Ed 826, 67 ALR 1244 (1930), the Supreme Court held that, for federal estate tax purposes, the reservation of the income for life by the donor of a trust did not make the transfer one intended to take effect in possession or enjoyment at or after death. In *McCaughn v. Carnill,* 43 F2d 69 (3d Cir 1930), *cert denied,* 283 US 825, 51 S Ct 350, 75 L Ed 1439 (1931), the creation of an irrevocable trust, by which the settlor reserved the income to himself for life and to his wife for life, with the remainder over, was held not to be a transfer intended to take effect in possession or enjoyment at or after the settlor's death. Other like decisions followed. Annot, 100 ALR 1244, 1247 et seq. (1936). In consequence, the federal estate tax law, Revenue Act of 1926, was amended by joint resolution of March 3, 1931, codified as 26 USCA § 411(c). "The state courts have refused to follow *May v. Heiner* * * * and other decisions of the Federal courts, and have held that the reservation of the income for life by the settlor of a trust makes the transfer one intended to take effect in possession or enjoyment at or after his death under their respective inheritance tax statutes. * * *" Annot, 100 ALR at 1248.

death. In addition, Mrs. Foreman retained a reversionary interest in the trust corpus which was extinguished only by her death prior to the 30-year trust term. Consequently, it was only upon Mrs. Foreman's death that any beneficial interest in the trust corpus was finally and completely transferred to her children. The *inter vivos* interest of the decedent in the fund need not be large to subject it to inheritance tax upon death. *Est. of Seitz, supra,* 6 OTR at 249.

█ In *Curry v. McCanless, supra,* the court considered the power of two states to impose an inheritance tax upon the transfer of intangibles held in trust:

> "Very different considerations, both theoretical and practical, apply to the taxation of intangibles, that is, rights which are not related to physical things. Such rights are but relationships between persons, natural or corporate, which the law recognizes by attaching to them certain sanctions enforceable in courts. The power of government over them and the protection which it gives them cannot be exerted through control of a physical thing. They can be made effective only through control over and protection afforded to those persons whose relationships are the origin of the rights. (Citations omitted.) Obviously, as sources of actual or potential wealth—which is an appropriate measure of any tax imposed on ownership or its exercise—they cannot be dissociated from the persons from whose relationships they are derived. * * *

> "* * * From the beginning of our constitutional system control over the person at the place of his domicile and his duty there, common to all citizens, to contribute to the support of government have been deemed to afford an adequate constitutional basis for imposing on him a tax on the use and enjoyment of rights in intangibles measured by their value. * * *" (307 US at 365-366, 59 S Ct at 905-906, 83 L Ed at 1347, 123 ALR at 169-170.)

In this case, decedent died domiciled in Oregon. Up until the time of her death, decedent retained substantial economic use and enjoyment of the corpus of an *inter vivos* trust which was admittedly a transfer

intended to take effect after her death. Only after decedent's death were her son and daughter assured of any use and enjoyment of the trust property. Plaintiff has raised a nice difference in the facts between *Curry v. McCanless, supra,* and those in the present suit, raising the same question voiced by the court in *MacClurkan v. Bugbee, supra.* However, the great weight of authority opposes the decision in that case. Under the rule established in *Curry v. McCanless,* and numerous other decisions, these facts are sufficient to support Oregon's collection of an inheritance tax on the transfer of the use and enjoyment of the trust property to decedent's beneficiaries.

The second issue concerns the deductibility under ORS 118.070(1) (1975 Replacement Part) of income taxes paid by plaintiff on decedent's behalf to the State of Hawaii. The issue is one of statutory construction.

Plaintiff claims the income taxes are deductible under ORS 118.070(1)(a) (1975 Replacement Part), which provided for the deduction of "[c]laims allowed against the estate owing at the time of death and paid from property the value of which is included in the taxable estate." Defendant would disallow the deduction, contending that the deduction of income taxes was specifically provided for in ORS 118.070(1)(e) (1975 Replacement Part), which only allows a deduction for income taxes paid to the United States and to the State of Oregon.

In determining whether the legislature intended that only those income taxes enumerated in ORS 118.070(1)(e) (1975 Replacement Part) could be deducted in ascertaining the net value of the estate, or whether it contemplated other income taxes could be deducted as claims against the estate under ORS 118.070(1)(a) (1975 Replacement Part), it is proper to consider other statutes *in pari materia. Clarkston v. Bridge,* 273 Or 68, 539 P2d 1094 (1975).

An examination of the Oregon Probate Law, of which ORS chapter 118 (the Inheritance Tax

[ 494 ]

Act) is a part, convinces the court that the term "claims" has not been used by the legislature to include tax obligations. In the probate law, the legislature has consistently used the terms "claims" and "taxes" in such a way as to indicate that the former does not include the latter. If taxes were but one of the claims against an estate, it would have been unnecessary for the legislature to authorize a personal representative to "[p]ay taxes, assessments and expenses incident to the administration of the estate" (ORS 114.305(17)), in addition to authorizing the personal representative to "[s]atisfy and settle claims and distribute the estate as provided in ORS chapters 111, 112, 113, 114, 115, 116 and 117" (ORS 114.305(25)). Since the legislature is presumed not to have engaged in an idle act (*Thompson v. IDS Life Ins. Co.*, 274 Or 649, 549 P2d 510 (1976)), it could not have intended that "taxes" be included within "claims against the estate." Consequently, the income taxes paid to Hawaii cannot be deducted under ORS 118.070(1)(a) (1975 Replacement Part). Nor can they be deducted under subsection (1)(e). The legislature having specifically provided for the deduction of income taxes paid to the United States or to the State of Oregon, the maxim *expressio unius est exclusio alterius* would apply to bar the deduction of any other income taxes.

The defendant's Order No. IH 77-9, dated November 21, 1977, and Notice of Determination and Assessment of Inheritance Tax No. FG 215082 are affirmed (except as affected by the "pickup" tax claimed by Oregon, as to which the parties have stipulated). The plaintiff shall pay the additional tax as required by statute and defendant's order, except as stipulated. Rule 26 shall be invoked, if necessary.

Defendant is awarded statutory costs.