Argued and submitted July 10, 1989, affirmed as modified April 25, 1990

# STATE OF OREGON ex rel
# STATE OF CALIFORNIA, COUNTY OF SONOMA
## obo MEMBRILA, Minor Children,
### *Respondent,*

*v.*

## CONTRERAS,
### *Appellant.*

### (CV88-352; CA A49904)

790 P2d 1174

Anthony Worth, Oregon Legal Services, Portland, argued the cause for appellant. With him on the brief was Jeanne Kincaid, Oregon Legal Services, Portland.

Meg Reeves, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

### BUTTLER, P. J.

The State of California, pursuant to the Revised Uniform Reciprocal Enforcement of Support Act (URESA), ORS 110.005 *et seq,* seeks an award of past and future child support from father, whose spouse and some of whose children have been receiving general assistance since 1981. The trial court awarded future child support in the amount of $117 per month and entered a judgment against father for $10,179 for past support. Review is *de novo.*

The parties were married in 1965 and had seven children. Although they separated in 1979, they remain legally married. There has been no prior order or judgment concerning the parties' support obligations. At the time of trial, three of the children, only one of whom was under the age of 18, lived with father. Three minor children, the youngest of whom is not father's child, lived with the mother. Father is a farm worker, employed seasonally pruning trees and picking apples. His hourly wage ranges from $5 to $5.50. Work is scarce during the winter months. Averaged over the year, he makes approximately $600 per month net.

The mother has received general assistance payments from California since January, 1981. The actual amount of assistance has varied, depending on the number of children in her household and whether she was included in the grant. At the time of trial, she was receiving a total of $659 per month ($564 in general assistance and $95 in food stamps). In establishing the amount of future child support, the trial court and the state assumed that each spouse had custody of two children for whom they had reciprocal duties of support. To calculate the amount in arrears, the court multiplied the amount of future support that it had ordered by the number of months that the mother had received public assistance.

There is no dispute but that both parents have a duty to support their children. *See Haxton and Haxton,* 299 Or 616, 619-27, 705 P2d 721 (1985). URESA provides a mechanism by which a foreign state may recoup support that it has paid through general assistance when a parent fails to contribute to the support of his or her children. It does not mandate any

particular method to calculate the amount of support or provide for any past support that has not been ordered previously;[1] however, the duty of support is that "imposed or imposable by law," ORS 110.022(3), under the laws of the state in which the obligor was present during the time for which support is sought. ORS 110.071. In this case, Oregon law controls father's obligation. Thus, when this case was tried, the trial court was free to choose among several methods, including those in ORS chapter 107, relating to dissolution, separation and annulment, rules adopted by the Support Enforcement Division (Division), *former* OAR 137-50-010 *et seq*, which provided a scale and formula for recovery of general assistance payments made by Oregon, or, possibly, the "Relatives' Contribution Scale" contained in ORS 416.061, a part of the Relatives' Responsibility Law, ORS 416.010 to ORS 416.270, even though assistance provided by AFSD "shall not be recovered by the division" under that law. ORS 416.280.

*Former* ORS 107.105(1)(c) authorized a court to award an amount that represents a "just and proper contribution" by the noncustodial parent in dissolution cases. If this were a dissolution case, it is probable that father's support obligation would be minimal. Under the Relatives' Responsibility Law, he would be required to pay $13 per month for one child. Under Oregon Laws 1989, chapter 811, in any judicial or administrative proceeding for the award of child support, the amount of child support must be determined under a formula established by rules adopted by the Support Enforcement Division of the Department of Justice. ORS 25.270 and ORS 25.275. Those rules, OAR 137-50-320 to OAR 137-50-490, by their terms apply to URESA proceedings. However, because they did not become effective until October 3, 1989, they are not required to be applied to this proceeding, which was filed and decided by the trial court before that date. *Butcher and Butcher, supra,* n 1, 100 Or App at 478.

---

[1] URESA is a uniform act, incorporating existing procedures applicable in the state where the obligor resides. *Clarkston v. Bridge,* 273 Or 68, 78 n 12, 273 P2d 68 (1975); Brockelbank, "Is the Uniform Reciprocal Enforcement of Support Act Constitutional?," 31 Or L Rev 97, 107 (1952). The trial court was not bound by any existing method or guideline to establish the amount of child support. *But see* OAR 137-50-320 to OAR 137-50-490, effective October 3, 1989, which are not applicable to this case. *Butcher and Butcher,* 100 Or App 476, 786 P2d 1293 (1990).

Because the application of the new rules requires evidence that is not in this record, we will apply, essentially, the scale and formula in *former* OAR 137-50-260 and OAR 137-50-270, which assumes that the custodial parent receives governmental assistance and has a poverty level income, with limited assets. In split custody situations, the formula prorates the minimum support obligation between the children in each household and offsets one parent's support obligation against the other. *See former* OAR 137-50-260.[2]

■ Application of the split custody formula to determine the amount of future support in this case produces a fair and equitable result. The mother's obligation of support for the minor child in father's custody should be offset against his support obligation for the two children in the mother's custody. At the time of trial, mother had custody of two minor children, ages 10 and 12; father had custody of their 16-year-old daughter.[3] Assuming, as the parties do, that father earns approximately $600 per month, we conclude that his child support obligation is $65.10 per month. The judgment is modified accordingly.

■ The court also entered judgment against father for $10,179 as child support that he should have paid, even though there has been no order or judgment of any kind requiring him to pay support. That amount was determined by multiplying the amount of future support by the number of months during which father had paid no support and the mother had received general assistance. In order to determine the amount of any judgment that should be entered for past support, we need to

---

[2] Split custody exists "where there is more than one joint child and * * * each parent has physical custody of at least one of the children." *Former* OAR 137-50-260(1). A "joint child" is a child of the mother and father involved in the support proceedings. The definition of a "joint child" is qualified if only one parent is seeking support. In that case, "a joint child is the child for whom support is sought." *Former* OAR 137-50-200(1). The state argues that, because father did not seek support for the minor in his custody, there is no "joint child"; therefore, the split custody rule is inapplicable. However, there appears to be no way for father to seek support from mother in this URESA proceeding. Therefore, it makes no sense to apply that definition here. In URESA proceedings commenced before October 3, 1989, the court may borrow from any existing procedure, whether or not it would apply in a proceeding by AFSD to recoup general assistance payments made by Oregon.

[3] Although the state and the trial court assumed that father was supporting two minor children, at oral argument in this court father stated that he was supporting only one.

determine the authority for entering a judgment for retroactive child support, in the absence of a prior support order.

Although URESA does not specifically provide for the recovery of any retroactive support that has not been previously ordered, it includes within the definition of "duty of support" a "duty of support whether imposed or imposable by law." ORS 110.022(3).[4] Under the Parental Responsibility for Dependent Children Act, ORS 416.400 to ORS 416.470, when the Department of Human Resources of this state or its equivalent in any other state provides public assistance for the benefit of a dependent child, each payment creates a "state debt" that is due and owing to the department by the parent in the amount of the public assistance paid. ORS 416.410(1). When there has been no court order, the administrator may set the amount of "state debt accrued and accruing," and the department is subrogated to the right of the dependent child or the custodial parent to prosecute any support action to obtain reimbursement of the amount expended. ORS 416.410(1)(b) and (2).

In determining the "state debt" that has accrued in favor of the department for the purpose of ordering reimbursement by the obligor, the department applies "the principles of equity." ORS 416.415(5). The trial court apparently recognized that, because its judgment is for less than the state debt. If we use the same formula as the trial court did, the judgment would be for $5,663.70 (87 $\times$ $65.10). We conclude that a judgment in that amount would be equitable.

Judgment modified to require father to pay $65.10 a month as support and to award a judgment against him for $5,663.70 and affirmed as modified.

---

[4] *But see* ORS 110.071, which we interpret to mean that the duty of support shall not be less than the support defined in ORS 110.022(3). ORS 110.071 provides:

"Except as provided in ORS 110.022(3), duties of support applicable under this chapter are those imposed under the laws of any state where the obligor was present for the period during which support is sought. The obligor is presumed to have been present in the responding state during the period for which support is sought until otherwise shown."